COMMONWEALTH *vs.* FRANK KINNEY.

Suffolk.   April 3, 4, 1972. — May 1, 1972.

Present: TAURO, C. J., SPIEGEL, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Unsworn statement by defendant, Judicial discre-
tion, Charge to jury, Capital case.   *Homicide.   Wanton or Reck-*
*less Conduct.*

It was not an abuse of discretion for the judge in a criminal trial to
interrupt the defendant during a lengthy unsworn statement by
him to the jury to ask how long he would continue and to request
him to "speak of the case."   [711]

Even though the judge at the trial of capital cases had to call a recess
because of his throat, there was no basis to a claim by the de-
fendant that the judge lowered his voice during his instructions
to the jury on self-defence and manslaughter.   [711–712]

Where it appeared that there was evidence at the trial of capital
cases which would warrant a finding that the defendant was guilty
of involuntary manslaughter, the judge erred in refusing to sub-
mit that issue to the jury.   [712]

Where the weight of the evidence in capital cases indicated involun-
tary manslaughter through firing of a revolver in a crowded hall-
way rather than murder but the issue of involuntary manslaughter
was not submitted to the jury, although charges were given on
first and second degree murder and voluntary manslaughter, and
there were verdicts of guilty of second degree murder, the cases
were remanded to the Superior Court under G. L. c. 278, § 33E,
for entry of verdicts of guilty of manslaughter.   [713]

INDICTMENTS found and returned in the Superior Court
on January 13, 1970.

The cases were tried before *Sullivan, J.*

*Robert A. Stanziani* for the defendant.

*Maurice H. Sullivan, Jr.,* Special Assistant District
Attorney (*William J. Doyle,* Assistant District Attorney,
with him) for the Commonwealth.

BRAUCHER, J.   On the morning of Thanksgiving Day, November 27, 1969, a forty-four year old woman and a two year old child were shot and killed and two other women were shot and wounded in a hallway outside the second floor apartment in Roxbury where the defendant lived with his wife and four children.   The defendant was tried before a jury on two indictments for murder, two indictments for assault and battery by means of a dangerous weapon, and an indictment for unlawfully carrying a firearm.   He was convicted of second degree murder on each of two indictments and of assault and battery by means of a dangerous weapon on each of two indictments, and appeals under G. L. c. 278, §§ 33A–33G.   The judge directed a verdict of not guilty on the firearm charge.

We summarize the Commonwealth's evidence.   About 11:30 A.M. the defendant was engaged in a heated argument in front of the door to his apartment with one Lillian Burkes, who lived on the floor below.   The two had been enemies for a long time.   Mrs. Burkes was a short, rugged, heavy woman weighing about 160 to 170 pounds. They both used vulgar language, and they struck each other.   When the argument began, the defendant and three women were present in the hallway; later there were ten to twenty women and children, and the hallway was crowded.   The women pushed the defendant.   Someone screamed that he had a gun, and the crowd scattered. He fired five shots and hit four people: Mrs. Burkes, a two year old girl, a woman who was arriving to visit her sister on the floor above, and his own wife.   Mrs. Burkes and the girl died.   The defendant left his apartment and was soon arrested a few blocks away.   The gun and twenty-nine rounds of live ammunition were taken from his person.

The defendant gave exculpatory testimony which was corroborated to a considerable extent by his wife and for the most part was consistent with that of the Commonwealth's witnesses.   He was fifty-one years old, weighed 269 pounds, and had a history of heart trouble and head injuries.   He had come home about 4 A.M. from driving a

taxicab, went to bed, and got up about 9:30 A.M. to cook the Thanksgiving turkey. One of his children complained of a fight with a neighbor's child and the neighbor spoke harshly to the defendant. About 10:30 A.M. Mrs. Burkes knocked on his door, called him an obscene name, and said "we are going to get you sooner or later anyway." The defendant told his wife that Mrs. Burkes must be drunk. He was afraid that the women "could go off and get a bunch of men and come back . . . rush in on me while I'm cooking, take advantage of me." He then got his revolver from his closet. He was right handed, and put it in his left pants pocket because it would be too tempting in the right pocket. About 11:30 A.M. someone again knocked on his door, and his fight with Mrs. Burkes began. He was struck on the head with something like a broom handle and dragged to the metal stairs leading down to the first floor. He was dizzy and weak and could not see; someone was yelling, "Kill him." With some difficulty he drew the gun from his pocket, pointed it at the ceiling and fired it. He never intended to harm anyone.

1. The defendant made an unsworn statement to the jury. See *Commonwealth* v. *McConnell,* 162 Mass. 499, 501–503; *Commonwealth* v. *O'Brien,* 360 Mass. 42, 48–50. After he had spoken at length, the judge interrupted to ask how long he would continue and to request him to "speak of the case." The defendant excepted, and now argues that the interruption, together with certain remarks of the judge during the defendant's testimony, might have led the jury to infer that the judge disbelieved both the testimony and the unsworn statement. We have examined the transcript and find no abuse of the judge's discretion. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563–564; *Commonwealth* v. *Leonard,* 352 Mass. 636, 641–642.

2. The defendant claims that the judge lowered his voice during those parts of his charge to the jury which explained the elements of self-defence and manslaughter. When the defendant made this objection to the judge and took an exception, the judge said, "As to the intonation of

my voice, I admit I had to call a recess because of my throat." We find no basis for the claim in the record before us. *Commonwealth* v. *Sullivan*, 354 Mass. 598, 608.

3. The judge charged the jury with respect to first degree murder, second degree murder and voluntary manslaughter. He did not, however, instruct the jury that they could find the defendant guilty of involuntary manslaughter if they found an unlawful homicide unintentionally caused by an act which constituted such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct. See *Commonwealth* v. *McCauley*, 355 Mass. 554, 560, and cases cited. Such a charge was requested by the defendant and refused, and the defendant renewed the request at the close of the charge and excepted to its refusal. "If on any view of the evidence in a prosecution for murder the issue of manslaughter is open, it must be submitted to the jury." *Commonwealth* v. *McCauley, supra,* at 559, and cases cited.

The defendant testified that he was dragged to the metal stairway, that he found himself on about the second step down holding onto the rail with his right hand, that the women were beating him on the head, that he was getting dizzy and weak and could not see, that the women were hollering, "Kill him," and that he "was looking to get cut" and thought he was going to be killed. At this point he felt the gun in his left pocket, and put his hand in his pocket. Initially, he couldn't get the gun out. "When I got my arm where I could get it up, I pointed it up towards the ceiling, then I couldn't squeeze the gun off. . . . So I prayed, 'God, please help me.' I heard the gun go off and I just blacked out."

The jury were, of course, not required to believe this testimony. If believed, however, it would warrant a finding that the defendant was guilty of involuntary manslaughter. It was therefore error to refuse to submit that issue to the jury. Compare *Commonwealth* v. *Costa*, 360 Mass. 177, 184.

4. In cases where we have found error in the failure to submit to the jury the issue of manslaughter, we have ordinarily ordered a new trial. *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212–213. *Commonwealth* v. *Campbell*, 352 Mass. 387, 398. *Commonwealth* v. *McCauley*, 355 Mass. 554, 561–562. The evidence here warranted the jury's verdicts of guilty of murder in the second degree. See *Commonwealth* v. *Pratt*, 360 Mass. 708, 715. The only prejudice to the defendant was the exclusion of the possibility of a verdict of a lesser degree of guilt. See *Commonwealth* v. *Ransom*, 358 Mass. 580, 583, 587; *Commonwealth* v. *Rego*, 360 Mass. 385, 396–397. Compare *Commonwealth* v. *Bearse*, 358 Mass. 481, 487–488. The defendant asks that we exercise our power to reduce the degree of guilt. But the question remains whether justice is likely to be more nearly achieved if the Commonwealth is given an opportunity to submit the issue of second degree murder to another jury.

We believe that we should exercise our power under G. L. c. 278, § 33E, to reduce the murder convictions to manslaughter. As in *Commonwealth* v. *Baker*, 346 Mass. 107, 117–119, it was an act of extraordinarily poor judgment for the defendant to procure a loaded revolver in the circumstances. But even on the testimony of the Commonwealth witnesses who were friends of the deceased Mrs. Burkes, the defendant was not the aggressor; he was subjected to an angry confrontation at the door of the apartment where he lived with his family. The weight of the evidence clearly is that he was confused and frightened rather than enraged.

5. In the cases of assault and battery by means of a dangerous weapon, the judgments are affirmed. The murder cases are remanded to the Superior Court for the entry of verdicts of guilty of manslaughter and for the imposition of sentences.

*So ordered.*