COMMONWEALTH *vs.* ROBERT J. C. JONES.

Essex.    January 10, 1975. — February 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Practice, Criminal,* Capital case.    *Homicide.*

A verdict of murder in the second degree, entered in the Superior Court
    after a trial on an indictment charging murder in the first degree, was
    vacated and entry of a verdict of manslaughter was ordered by the
    Supreme Judicial Court pursuant to its power under G. L. c. 278,
    § 33E, where the evidence indicated that the defendant had stabbed
    the victim during the heat of a sudden fight and in fear of aggression,
    thus precluding the element of malice necessary for a verdict of
    murder. [808-809]

INDICTMENT found and returned in the Superior Court on
May 13, 1969.

The case was tried before *Lappin,* J.

*Daniel F. Toomey* for the defendant.

*Charles C. Dalton,* Assistant District Attorney, for the
Commonwealth.

TAURO, C.J.    The defendant was convicted of murder in
the second degree on an indictment charging him with
murder in the first degree.

The defendant's appeal (G. L. c. 278, §§ 33A-33G) is
based on two grounds: (1) "that the finding of malice,
implicit in the murder verdict, was most inappropriate,"
and thus this court, in the proper exercise of its powers
under G. L. c. 278, § 33E, should either grant a new trial or
order that the verdict be reduced to manslaughter; and (2)
that the trial judge erred "by failing to charge the jury with
specificity concerning evidence of the deceased's violent
and quarrelsome character and evidence of threats of death
made by the deceased to the defendant."

The pertinent evidence is summarized briefly. On the
night of October 13, 1968, the victim was stabbed in the

chest during an altercation with the defendant outside a café on Buffum Street, Lynn. The victim died at the Lynn Hospital shortly after as a result of the stab wound. The defendant told Officer Martin that he had been threatened by the victim with a razor and, "This is why I stabbed him." At the hospital a straight edge razor was found in the victim's pocket.

Earlier in the day, the defendant had had an argument with the victim at the same café. The victim was highly incensed at the defendant because a girl friend of the victim requested the defendant to drive her to Revere. The victim threatened the defendant with a razor. This argument was finally quieted down and the defendant left. He went fishing with his wife and children. Later that evening the defendant returned to the café for a "couple of beers" and there was another confrontation with the victim. They went out on the sidewalk and after some argument the victim struck the defendant a heavy blow on the jaw which sent him reeling backward several steps. The defendant claims the victim pulled out a razor and came at him and he then pulled out his knife and stabbed the victim in the chest. There was evidence that the victim was quite intoxicated and that the defendant had been drinking but was not drunk.

A police officer who witnessed the knifing testified that he did not see a razor but he did see the victim land a heavy blow on the defendant's jaw immediately before the knifing. There was evidence that the victim, who had a "reputation for his knife and his fight," was "very strong," "big," and a troublemaker. He was about six feet tall and weighed about 195 pounds. The defendant was five feet, eight inches, and weighed 140 pounds. There was evidence that the knife used in the killing was the defendant's fishing knife, which he carried with him every day.

General Laws c. 278, § 33E, as amended through St. 1974, c. 457, provides in part, "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consid-

eration the court may, if satisfied that the verdict was against the law or the weight of the evidence . . . or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence." In construing § 33E, we have said, "That statute 'consigns the facts as well as the law to our consideration, gives us the power and duty exercised by a trial judge on a motion for a new trial, and requires us to consider the whole case broadly to determine whether there was any miscarriage of justice.' " *Commonwealth* v. *Williams,* 364 Mass. 145, 150 (1973). *Commonwealth* v. *Baker,* 346 Mass. 107, 109 (1963). *Commonwealth* v. *Ransom,* 358 Mass. 580, 583 (1971).

Although the evidence was conflicting in several respects, a careful reading of the transcript and a weighing of the evidence, without the benefit of seeing the witnesses, *Commonwealth* v. *Baker, supra,* leads us to arrive at certain findings and draw certain inferences. The defendant and the victim had both done considerable drinking during the afternoon and evening of the homicide. The altercation was initiated by a nonsensical argument earlier in the day. Hours later, at a subsequent meeting of the victim and the defendant at the same café, the argument was resumed. It continued on the sidewalk outside the café and the victim struck the defendant a heavy blow on the jaw. In retaliation, the defendant attacked the victim with one blow of a knife which proved to be fatal.

As noted above, the defendant testified that he used his knife in self-defense when the victim came at him with a straight edge razor. If the jury had believed this evidence, in view of the prior threats by the victim and the undisputed fact that the victim first struck the defendant on the jaw, the jury would have been warranted in returning a verdict of not guilty. But we believe that the evidence as to the threat with a razor by the victim was not persuasive and that it was not accepted by the jury.

This still leaves the question whether there was malice in the defendant's attack on the victim so as rationally to

support a verdict of murder or, in the alternative, whether justice requires the entry of a verdict of manslaughter pursuant to § 33E. We think the question is very close.[1]

In *Commonwealth* v. *Williams,* 364 Mass. 145 (1973), we held that, although the jury were warranted in their verdict, the thrust of the evidence required a reduction of a verdict of murder in the first degree to murder in the second degree to avoid a miscarriage of justice. Here, we think that, while the jury were warranted in returning a verdict of murder in the second degree, justice requires that we order entry of a verdict for manslaughter.

In addition to the evidence discussed above, the following considerations compel our decision to exercise our power pursuant to § 33E. Although the victim and the defendant had been barroom acquaintances prior to the homicide, there was no evidence that they had had' prior trouble. The arguments which precipitated the violent quarrel and subsequent fatal attack were senseless, undoubtedly the result of too much drinking. The defendant, who testified on his own behalf, was twenty-eight years of age at the time, married, with six small children and gainfully employed. There was no evidence introduced of any prior criminality on the part of the defendant to impeach his credibility. G. L. c. 233, § 21. We assume there was none.

While we are not convinced that the defendant inflicted the fatal wound in the act of defending himself from an attack with a razor, we believe that the defendant at all times was reasonably apprehensive that the victim might

---

[1] The judge gave correct and detailed instructions on all the possible verdicts including manslaughter. In his instruction on manslaughter he stated to the jury, "[I]f you find that . . . [the defendant] used unreasonable force in resisting bodily harm, then this would be a situation where you can find manslaughter."

"[I]f a person is provoked, if a person is assaulted, for instance, and he is in a fight and in the heat of fight, he picks up a weapon and kills, this is manslaughter as opposed to murder, because the law recognizes the frailty of human nature, likewise recognizes the reaction of a human being under provocation. . . .

"If a person in the heat of great passion, provocation [kills], knowing, as I say, that the courts recognize the weakness of a human being, they reduce it from murder to manslaughter. . . .

"When we come to manslaughter, it is the absence of this malice [without provocation or without heat or passion] that distinguishes it from murder."

use the razor which the defendant knew the victim possessed.

Ordinarily the use of a dangerous weapon in a killing is sufficient evidence of malice to constitute murder. "We believe, however, that justice will be more nearly achieved by concluding that the intention . . . [to attack with a knife] was formed in the heat of sudden affray or combat," *Commonwealth* v. *Baker,* 346 Mass. 107, 119 (1963); accord, *Commonwealth* v. *Young,* 326 Mass. 597, 601 (1950), thus negating the necessary element of malice.

This case is clearly distinguishable from recent cases in which we have refused to exercise our power to reduce a verdict under § 33E. *Commonwealth* v. *Pratt,* 360 Mass. 708, 715 (1972). *Commonwealth* v. *Deeran,* 364 Mass. 193, 196-197 (1973). *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 311-313 (1973). *Commonwealth* v. *Rooney,* 365 Mass. 484, 495-496 (1974). *Commonwealth* v. *Stillwell, ante,* 1, 4-6 (1974). In these cases we held that the interest of justice did not require an order changing the verdict of the jury. Each case involved a situation where the defendant, after an initial confrontation, left to procure a weapon and then returned to kill the victim. In none was the element present of fear of sudden attack or aggression immediately preceding the killing. In the instant case, the great weight of the evidence tended to establish that the killing was not premeditated or carried out with malice aforethought. For this reason we deal with it as the exceptional case where we will exercise our authority under G. L. c. 278, § 33E.

We are of opinion that a verdict of manslaughter should be entered. In so stating, we are mindful that after the jury's verdict, the defendant moved to have the judge reduce the verdict from second degree murder to manslaughter.

In denying the motion the judge properly ruled that it was not within his power to allow the motion.[2] Similarly, in

---

[2] The judge stated that he was unaware that the motion to reduce the verdict to manslaughter was "appropriate." In giving counsel time to present authorities, the judge said, "If it is, however, I will be happy to entertain it."

denying the defendant's motion for a new trial the judge below was not empowered to act, as we are, under the provisions of G. L. c. 278, § 33E. *Commonwealth* v. *Baker,* 346 Mass. 107 (1963). *Commonwealth* v. *Williams, supra.*

As to the other assignment of error concerning the judge's instructions to the jury, it is clear that the jury were fully and clearly instructed as to all aspects of the case and there was no error.

The case is remanded to the Superior Court where the verdict of murder in the second degree and the sentence previously imposed are to be vacated. A verdict of guilty of manslaughter shall be entered and sentence imposed.

*So ordered.*