## COMMONWEALTH vs. MINNIE MAE GAULDEN
## (and a companion case of the same name).

Hampden. Suffolk. January 6, 1981. — May 6, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Evidence*, Photograph. *Witness*, Expert. *Homicide. Supreme Judicial Court*, Superintendence of inferior courts. *Practice, Criminal*, Required finding, Appeal by Commonwealth. *Rules of Criminal Procedure.*

There was sufficient evidence at a murder trial to warrant a finding that the defendant had made a knowing, intelligent, and voluntary waiver of her Miranda rights before making statements to the police. [546-548]

The judge at a murder trial did not abuse his discretion in admitting in evidence autopsy photographs of the victim's body where the medical examiner who conducted the autopsy carefully distinguished between the knife wounds inflicted by the defendant and surgical wounds made in the course of treating the victim before he died and where the photographs were relevant to show the nature of the knife wounds and were not inflammatory. [548]

The judge at a murder trial did not abuse his discretion in permitting the vice president of a hardware business, who had sold numerous locks similar to the one on the door of the apartment where the defendant and the victim lived, to testify as to the operation of the lock. [549]

At a murder trial, evidence that, in the course of an argument between the defendant and the victim in which the victim had threatened to harm the defendant, the defendant left the bedroom where the victim was sitting, went to the kitchen, picked up a knife, returned to the bedroom and stabbed the victim warranted a finding beyond a reasonable doubt that the defendant had acted with malice aforethought and had not acted in self-defense. [549-550]

This court permitted the Commonwealth to seek relief under G. L. c. 211, § 3, from a judge's allowance of a defendant's motion pursuant to Mass. R. Crim. P. 25 (b) (2) where the Commonwealth's right to appeal directly from the allowance was not previously clear and where the Commonwealth's action raised an issue of general significance to the administration of justice. [550-551] LIACOS, J., dissenting in so far

as the majority hold that the Commonwealth has a right to appeal from
the allowance of a motion under Mass. R. Crim. P. 25 (b) (2).

A judge had authority under Mass. R. Crim. P. 25 (b) (2) and G. L.
c. 278, § 11, to order entry of a finding of guilty of manslaughter in
lieu of a jury's verdict of guilty of murder in the second degree even
though the murder conviction was warranted by the evidence and, in
the circumstances , he did not abuse his discretion in so doing. [551-558]

INDICTMENT found and returned in the Superior Court
Department on May 17, 1979.

The case was tried before *Tamburello*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 15, 1980.

The case was reported by *Cutter*, J.

*S. Thomas Martinelli* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J.  In October, 1979, a Hampden County jury
found the defendant guilty of murder in the second degree.
In her appeal, which we transferred here on our own mo-
tion, the defendant has raised various challenges to her con-
viction.  We deal with those challenges first in this opinion
and conclude that the challenges are without merit.  On
September 9, 1980, following the jury verdict, the judge
reduced the verdict from murder in the second degree to a
finding of guilty of manslaughter.  He purported to act
under G. L. c. 278, § 11, as appearing in St. 1979, c. 344,
§ 43A, and Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896
(1979).  The judge agreed that the jury verdict was war-
ranted by the evidence but concluded that "a finding of
guilty of the lesser included offense of manslaughter [was]
warranted by the weight of the evidence and would have
been more consonant with the interest of justice."  The
Commonwealth filed a petition in the county court seeking
relief under the general superintendency power of this court

(G. L. c. 211, § 3) from the judge's order reducing the conviction from murder in the second degree to manslaughter. A single justice of this court vacated the judge's order and reserved and reported a question to the full court concerning the judge's authority to reduce the conviction.[1] The Commonwealth argues that the judge had no legal authority to reduce the conviction. The defendant disagrees and argues that, in any event, the Commonwealth has no right to seek relief from the judge's action. We conclude in the portion of the opinion we characterize as the Commonwealth's "appeal" that (1) the Commonwealth is entitled to seek relief under G. L. c. 211, § 3, in the circumstances of this case, (2) the reported question should be answered in the affirmative because the judge had authority to reduce the verdict, and (3) the judge did not abuse his discretion in ordering a reduction of the verdict of murder in the second degree to a finding of guilty of manslaughter.

In the course of the opinion we set forth various aspects of the evidence introduced at trial. At this point, it is sufficient to say that, on April 13, 1979, following an argument, the defendant stabbed the victim several times with a kitchen knife in the bedroom of an apartment they shared in Springfield. No one else was present. The defendant called the police. The victim was taken to a hospital where attempts to save his life were unsuccessful. The defendant made statements to the police, and she testified at trial. We turn first to the defendant's challenges to her conviction because, of course, if there must be a new trial, the contest over the reduction of the conviction becomes unimportant.

---

[1] The reported question is as follows:

"In the circumstances of the present case, does a trial judge of the Superior Court Department have the authority under G. L. c. 278, § 11, as amended in 1979, and Mass. R. Crim. P. 25, to reduce a conviction warranted by the evidence, following a verdict of guilty of murder in the second degree, to a conviction of manslaughter, even if the weight of the evidence (in the opinion of the trial judge) should have led to conviction of the lesser included offense?"

### THE DEFENDANT'S APPEAL.

1. Shortly after the victim's death, the defendant made oral statements at the police station and signed a written statement, which the defendant has characterized as a confession. Miranda warnings had been given to the defendant at the apartment where the victim was stabbed. No Miranda warnings were repeated at the police station before the initial questioning of the defendant, not more than an hour after the warnings were given. Further Miranda warnings were given before the defendant participated in the preparation of her written statement.

The defendant argues that her confession should have been suppressed because she did not understand the Miranda warnings or give a voluntary or intelligent waiver of her rights.[2] No timely pretrial motion was filed seeking the suppression of the defendant's statements. See Mass. R. Crim. P. 13 (c) (2), 378 Mass. 873 (1979). In the course of the testimony of the policeman who questioned the defendant, defense counsel requested a voir dire "on the voluntariness of any confession that is coming up." The judge held an extensive voir dire and, at its conclusion, ruled on all the evidence that the confession was voluntary. Defense counsel was then permitted to state his position and stated it in terms of the absence of an understanding waiver of the defendant's Miranda rights.

---

[2] The defendant argues further that the written statement should have been suppressed because, by the time further Miranda warnings were given, the cat was out of the bag, that is, there was no point in holding back after her oral admissions. See *Commonwealth* v. *Haas*, 373 Mass. 545, 554 (1977); *Commonwealth* v. *Mahnke*, 368 Mass. 662, 686 (1975), cert. denied, 425 U.S. 959 (1976). This argument relies on the validity of the contention that the defendant did not make a voluntary and intelligent waiver of her Miranda rights before she made any oral statements to the police.

The defendant further contends that her statutory rights to make a telephone call were violated. See G. L. c. 276, § 33A. The record shows that a telephone call was made to the defendant's sister and that her sister came to the station. The defendant has not shown that there was a statutory violation.

The judge made no explicit findings either from the bench or by way of a written memorandum. It would have been greatly preferable if the judge had made subsidiary findings in connection with his ruling, just as it would have been preferable if the defendant had expressed her position in a written, pretrial motion to suppress. There is no suggestion that defense counsel did not know well before trial that the defendant had signed a written statement to the police.

The question before the judge was a straightforward one. Because the judge has retired, we cannot readily remand the case for him to make findings at this time. See *Commonwealth* v. *Forrester*, 365 Mass. 37, 45 (1974). We are in as good a position to deal with this matter as would be some other judge if we were to remand the case. A failure to make explicit findings is not in and of itself reversible error. See *Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980), and cases cited. Therefore, we have analyzed the record to see if the findings implicit in the judge's ruling are supported. See *Commonwealth* v. *Williams*, 378 Mass. 217, 224 n.4 (1979).

The judge was warranted on the evidence in concluding that the Commonwealth had met its heavy burden of proving that the defendant made a knowing, intelligent, and voluntary waiver of her Miranda rights. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 429 (1980). There was no evidence of coercion, duress, or improper suggestion. The defendant and the interrogating officer had known each other for eight years. The officer testified that the defendant had been drinking and that she was upset. He did not think that she was drunk. She was able to dress herself at the apartment before going to the police station, and she moved under her own power. The defendant testified on direct examination at the voir dire that the police officer told her at the apartment, after she got dressed, that she had the right to remain silent. She believed that the police officer told her that anything she said could be used against her. She recalled that he told her that she had the right to talk to a lawyer before she was asked any questions and to

have the lawyer with her during questioning. She further remembered that the police officer told her that, if she could not afford a lawyer, one would be appointed for her. She did not recall being told that she could stop any questioning at any time, nor did she recall saying anything in response. The police officer testified that he read the defendant her Miranda rights and that she said she understood those rights and wanted to talk to him. There were questions of fact for the judge as to the defendant's understanding of her rights and her waiver of them. The judge resolved the questions against the defendant. He heard the witnesses. We cannot say that his conclusion was unwarranted even though that conclusion was not compelled by the evidence.

2. The defendant challenges the admission of certain photographs taken in the course of an autopsy of the victim. She argues that the judge abused his discretion in admitting them. We conclude that the judge did not. Photographs of the victim's body were relevant to show the nature of the knife wounds inflicted by the defendant. See *Commonwealth v. Stewart*, 375 Mass. 380, 385 (1978). The medical examiner who conducted the autopsy carefully distinguished between those knife wounds and surgical wounds sustained when the victim was treated at a hospital before he died. The judge instructed the jury to make a distinction between the two types of wounds. The photographs were black and white and, although certainly not attractive, they were not inflammatory. Photographs showing the victim's larynx and trachea, severed from the body, were relevant in demonstrating the force of a blow to the victim's throat. Because the photographs were relevant and not inflammatory, we conclude that the judge acted within his discretion according to the standards concerning autopsy photographs set forth in our recent opinion in *Commonwealth v. Bastarache*, 382 Mass. 86, 106 (1980).[3]

[3] The defendant has not made a showing that she was prejudiced by the failure of the clerk to cover up the back of certain photographs, shown to

3. The defendant objects to the admission of testimony in rebuttal given by the vice president of a hardware business who has sold numerous locks similar to the one on the front door of the apartment where the defendant and the victim lived. In her testimony, the defendant testified in a way that indicated that a person could not open the front door without a key. The ability of the defendant to flee had a bearing on her claim that she acted in self-defense. The witness's testimony was offered to rebut the defendant's claim.

The judge regarded the witness as an expert who could be of some assistance to the jury in understanding the way in which the lock operated. The record does not show that the defendant insisted on a voir dire questioning as to the witness's qualifications. The point is obscured in an unrecorded bench conference, after which the defendant expressed no objection. We accord broad discretion to the trial judge with respect to the admission of expert testimony. See *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974); *Commonwealth* v. *Bellino,* 320 Mass. 635, 638, cert. denied, 330 U.S. 832 (1947). The judge did not abuse his discretion.

4. The judge correctly denied the defendant's motion for a finding that she was not guilty of murder. Because the jury returned a verdict of guilty of murder in the second degree, we need not consider whether the evidence warranted a verdict of guilty of murder in the first degree. We consider only whether the evidence warranted the verdict returned by the jury and conclude that it did. The evidence presented as of the conclusion of the Commonwealth's case in chief (and as of the close of the evidence) warranted findings that there was an argument between the victim and the defendant; that the victim threatened to harm the defendant; and that the defendant left the bedroom where the victim was sitting, went to the kitchen of the apartment,

the jury, on which the word "murder" was written. The photographs did not go to the jury room in that form, but they were passed around in that form by the jury during a portion of the trial. Defense counsel could have guarded against any error. In any event, there is no indication that any juror looked at the back of any "unsanitized" photograph.

picked up a knife, returned to the bedroom, and stabbed him. The jury were warranted in finding beyond a reasonable doubt that the defendant acted with malice aforethought and that she did not act in self-defense.

## THE COMMONWEALTH'S "APPEAL"

An initial question presented by the Commonwealth's challenge to the judge's order reducing the conviction from murder in the second degree to manslaughter is whether the Commonwealth is entitled to seek relief under the general superintendency power of this court. We have not decided to what extent, if at all, the Commonwealth is entitled to seek relief under G. L. c. 211, § 3, from action that it is claimed exceeded the power of a trial judge and whether the Commonwealth may assert substantive rights under G. L. c. 211, § 3. See *Commonwealth* v. *Cook*, 380 Mass. 314, 319-320 (1980); *Commonwealth* v. *McCarthy*, 375 Mass. 409, 414 (1978). We suggested in the *McCarthy* opinion that "[p]erhaps the Commonwealth would be entitled to relief under [G. L. c. 211, § 3] in a case which . . . showed that the judge acted arbitrarily, frivolously, with abuse of discretion, or contrary to law, in granting a new trial after a guilty verdict." *Commonwealth* v. *McCarthy, supra* at 415 n.6.

We have denied relief under G. L. c. 211, § 3, where an alternative and adequate means of obtaining relief is available. *Morrissette* v. *Commonwealth*, 380 Mass. 197, 198 (1980). We have held today that the Commonwealth has the right to appeal directly from the allowance of a motion under Mass. R. Crim. P. 25 (b) (1). *Commonwealth* v. *Therrien, ante* 529, 536 (1981). We see no distinction between the Commonwealth's right to appeal a motion under rule 25 (b) (1) and a motion under rule 25 (b) (2). The Commonwealth's right to appeal a rule 25 (b) motion was not clear prior to today. If there were no such right of appeal, the single justice suggested that an action in the nature of a writ of prohibition, charging that the judge exceeded his ju-

risdiction, would have been appropriate, quite apart from G. L. c. 211, § 3. See *Fadden* v. *Commonwealth*, 376 Mass. 604, 606-608 (1978), cert. denied, 440 U.S. 961 (1979); *Kevorkian* v. *Superior Court*, 295 Mass. 355, 356-358 (1936). The basic question has been reported to us by a single justice of this court. We could treat the Commonwealth's complaint under G. L. c. 211, § 3, as the equivalent of an appeal, or we could allow the Commonwealth to appeal late. Without becoming further involved in procedural niceties, we conclude that we have the authority to consider the Commonwealth's challenge and that it is appropriate that we do so on a matter of general significance to the administration of justice in the Commonwealth.

We turn, therefore, to a discussion of the authority of a judge under Mass. R. Crim. P. 25 (b) (2), and G. L. c. 278, § 11, to order the entry of a finding of guilty of manslaughter in lieu of the jury's verdict of guilty of murder in the second degree where the evidence warranted the murder conviction. Prior to the effective date of the Massachusetts Rules of Criminal Procedure and the 1979 amendment of G. L. c. 278, § 11, it was clear that a trial judge did not have the power to reduce a verdict to a conviction of a lesser offense.[4] See *Commonwealth* v. *Seit*, 373 Mass. 83, 94 (1977).

On the face of the specific provisions of Mass. R. Crim. P. 25 (b) (2), and G. L. c. 278, § 11, the judge had authority, on motion of the defendant, to order the entry of a verdict of guilty of manslaughter. Rule 25 (b) (2) provides that "[i]f a verdict of guilty is returned, the judge may on motion . . . order the entry of a finding of guilty of any offense included in the offense charged in the indictment." Section 11 of G. L. c. 278 provides that if a guilty verdict is returned, "the judge may on a renewed motion for a directed

---

[4] It is clear from transitional rule 1A of the Massachusetts Rules of Criminal Procedure, 378 Mass. 843 (1979), that those rules are applicable to this matter where the judge acted after July 1, 1979, even though the incident involved here occurred in April, 1979. Section 11, in the form with which we are concerned, was amended to be effective on July 1, 1979. St. 1979, c. 344, § 51.

verdict of not guilty pursuant to the Massachusetts Rules of Criminal Procedure . . . order the entry of a finding of guilty of any offense included in the offense charged in the indictment . . . ."

The Commonwealth argues that the judge has the authority, on a defendant's motion, to order the entry of a finding of guilty of a lesser included offense only when the evidence was not sufficient to support the verdict returned by the jury. Clearly, as rule 25 (a) states, a judge should enter a finding of not guilty on a motion for such a finding made during trial "if the evidence is insufficient as a matter of law to sustain a conviction on the charge." Similar language does not appear in that portion of rule 25 (see rule 25 [b] [2]) concerning postverdict action by the judge, but the Commonwealth points to the heading of rule 25 — Motion for Required Finding of Not Guilty — and argues that "required finding" means a finding required by law. The argument is that the judge may order a new trial based on the judge's assessment that justice may not have been done, but he may not properly weigh the evidence and conclude that a guilty finding of a lesser offense is more appropriate, even if the defendant moves for such a result.[5] It is argued that because the judge's action is tied to an initial motion for a finding of not guilty (or, in the words of § 11, a motion for a directed verdict), the judge may act under the options of the rule and statute only where that motion had to be allowed as a matter of law.[6]

In construing the meaning of rule 25 (b) (2), we appropriately may look to the reporters' notes for guidance concern-

---

[5] If the Commonwealth also agreed to the entry of a finding of guilty of a lesser offense, that result could be achieved, even under the Commonwealth's argument. In such a case, the action would be equivalent to granting a new trial and accepting a bargained guilty plea to the lesser included offense.

[6] This linking of the motion for a finding of not guilty and the judge's posttrial options is found more easily in § 11 which speaks of a renewed motion for a directed verdict than it is found in rule 25 (b) (2). Although rule 25 (b) (2) mentions a renewed motion in its first sentence, its last sentence refers to a new and different motion — a motion to set aside the verdict.

ing the intention of the Advisory Committee on Criminal Rules of Procedure that recommended the adoption of the rules of criminal procedure. From the reporters' notes, we conclude that the Advisory Committee intended that a trial judge have the power that was exercised in this case, although unfortunately the reporters' notes contain an arguably contrary indication that clouds the picture. We set forth in the margin the reporters' comments on rule 25 (b) (2), as they bear on the issue before us, emphasizing in the final sentence the word "not" which produces the contrary indication to which we have just referred.[7]

The reporters clearly state that rule 25 (b) (2) gives trial judges a power to enter a finding of a lesser degree of guilt in the same manner that this court has had such a power under G. L. c. 278, § 33E, on the appeal of a capital case. As part of the statutory revisions that were made in order to conform the statutes of the Commonwealth to the proposed rules of criminal procedure, § 33E was amended to limit the § 33E function of this court to appeals from convictions of murder in the first degree, eliminating the previous provision calling for such review in an appeal from a conviction of murder in the second degree on an indictment for murder in the first degree. St. 1979, c. 346, § 2. The new power of trial judges to enter a finding of guilty of any lesser included offense was extended to all cases. Our § 33E power has not been limited to cases in which the evidence did not

---

[7] "*Subdivision (b) (2)*. By giving the court the power to enter a finding of guilty of any lesser included offense or, in the language of G. L. c. 278, § 33E, a lesser degree of guilt, after a verdict of guilty, this rule deviates sharply from prior criminal practice under G. L. c. 278, § 11. *Commonwealth* v. *Jones*, 366 Mass. 805 (1975). This has the practical effect of extending to the trial courts, postverdict, a power in all cases much like that which had previously been reserved to the Supreme Judicial Court in capital cases under G. L. c. 278, § 33E (as amended). This increases the options available to the trial judge after verdict. It is anticipated that through this extension greater judicial economy will result where the evidence will *not* support the charge, but where the weight of the evidence clearly requires the conviction of a lesser included offense. See *Jones, supra*" (emphasis supplied). Reporters' Notes to Mass. R. Crim. P. 25 (b) (2), Mass. Ann. Laws, Rules of Criminal Procedure at 435 (1979).

warrant the conviction but has included cases in which we concluded that justice required the entry of a verdict of a lesser degree of guilt. See, e.g., *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 749 (1975); *Commonwealth* v. *Williams,* 364 Mass. 145, 151-152 (1973); *Commonwealth* v. *Baker,* 346 Mass. 107, 109, 119 (1963). Although the number of cases in which this court has reduced verdicts to a lesser degree of guilt has not been very great in relation to the total number of cases reviewed under § 33E, there were situations in which this court has concluded that a reduction should occur. See n.9 below. In cases under § 33E review, this court has proceeded, as it has had to, with the disadvantage of not seeing and hearing the witnesses. *Commonwealth* v. *Cox,* 327 Mass. 609, 615 (1951). A trial judge does not have that disadvantage. The placing of the § 33E review function in an appellate court tends to assure a uniformity of treatment of convicted defendants, although the cases turn on their particular facts to such a degree that, at best, only a general sense of uniformity can be achieved. Where the power is exercised by trial judges, some measure of regulation and uniformity can be obtained through appeals. As we have indicated above, the Commonwealth may appeal from the allowance of a motion under rule 25 (b). See *Commonwealth* v. *Therrien, supra* at 536.

The prosecution grants that rule 25 (b) (2) augments the powers of trial judges with respect to the reduction of verdicts. It argues, however, that the reporters' notes show an intention to permit such a reduction under rule 25 (b) (2) only, as the reporters' notes state, "where the evidence will *not* support the charge" (emphasis supplied). We think that the entire discussion of rule 25 (b) (2) indicates that the word "not" was inadvertently included in the reporters' notes.[8]

---

[8] Another reasonable alternative is to read the sentence last quoted in n.7 above as a partial rather than an all inclusive statement of the powers of the judge under rule 25 (b) (2). The point of that sentence may have been to highlight that portion of the new provision that extended to the judge the option to reduce a verdict, on motion, where the evidence did not support the verdict. If in such circumstances a judge reduces the conviction to one of a lesser offense, it will eliminate the otherwise

The sentence makes more sense in context when read without the word "not." In any event, it is clear that the reporters' notes are at best ambiguous and present no substantial ground for reading rule 25 (b) (2) other than as it is written, that is, as empowering a judge, on a defendant's motion, to "order the entry of a finding of guilty of any offense included in the offense charged in the indictment," without regard to the fact that the evidence warranted the jury's verdict of guilty of the greater offense.

In deciding whether to reduce a jury verdict to a finding of guilty of a lesser offense, a trial judge, acting under rule 25 (b) (2), should be guided by the same considerations that have guided this court in the exercise of its powers and duties under § 33E to reduce a verdict. This court has used that power sparingly.[9] Our function has not been to second-

---

unavoidable need for a new trial. It will also eliminate the appeal that would have followed from the denial of a motion for a new trial.

[9] We have surveyed the opinions of this court since the 1962 amendment of G. L. c. 278, § 33E (St. 1962, c. 453), that gave this court for the first time the duty to consider the degree of guilt where there had been a conviction of murder in the first or second degree. See *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963). We have identified approximately 230 opinions of this court through *Commonwealth* v. *Chasson, ante* 183 (1981), in which this court explicitly or by necessary implication considered whether to order the entry of a finding of a lesser degree of guilt in such a case. We have identified only the following thirteen opinions in which this court has ordered a reduction in the verdict:

| *Commonwealth* v. | Citation | Jury Verdict | Action on Appeal |
|---|---|---|---|
| 1. *Baker,* | 346 Mass. 107 (1963) | 1st Degree | Manslaughter |
| 2. *White,* | 353 Mass. 409 (1967) | 1st Degree | 2d Degree |
| 3. *Ransom,* | 358 Mass. 580 (1971) | 2d Degree | Manslaughter |
| 4. *Rego,* | 360 Mass. 385 (1971) | 1st Degree | 2d Degree |
| 5. *Kinney,* | 361 Mass. 709 (1972) | 2d Degree | Manslaughter |
| 6. *Williams,* | 364 Mass. 145 (1973) | 1st Degree | 2d Degree |
| 7. *Jones,* | 366 Mass. 805 (1975) | 2d Degree | Manslaughter |
| 8. *Vanderpool,* | 367 Mass. 743 (1975) | 1st Degree | 2d Degree |
| 9. *Mahnke,* | 368 Mass. 662 (1975) | 2d Degree | Manslaughter |
| 10. *Pisa,* | 372 Mass. 590 (1977) | 1st Degree | 2d Degree |
| 11. *Seit,* | 373 Mass. 83 (1977) | 2d Degree | Manslaughter |
| 12. *Cadwell,* | 374 Mass. 308 (1978) | 1st Degree | 2d Degree |
| 13. *King,* | 374 Mass. 501 (1978) | 1st Degree | 2d Degree |

guess the jury. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977). Where we have reduced a verdict, we have stated the reasons for our action. A trial judge should do so as well, as the judge did in this case. We have reduced a verdict in a variety of situations: where "justice will be more nearly achieved" (*Commonwealth* v. *Baker*, 346 Mass. 107, 119 [1963]); where the result is "more consonant with justice" (*Commonwealth* v. *Ransom*, 358 Mass. 580, 583 [1971]); where the verdicts of manslaughter were preferable to the verdicts of guilty of murder in the second degree because the defendant was not the aggressor and "[t]he weight of the evidence clearly [was] that [the defendant] was confused and frightened rather than enraged" (*Commonwealth* v. *Kinney*, 361 Mass. 709, 713 [1972]); where, on the weight of the evidence, the defendant's conduct was the result of spontaneous action rather than premeditation and "her criminal involvement was not of the nature that judges and juries, in weighing evidence, ordinarily equate with murder in the first degree" (*Commonwealth* v. *Williams*, 364 Mass. 145, 151-152 [1973]); where the defendant was subjected to sudden attack or aggression (*Commonwealth* v. *Jones*, 366 Mass. 805, 809 [1975]); and where on the defendant's statement, which the court accepted, there was no evidence of malice aforethought (*Commonwealth* v. *Mahnke*, 368 Mass. 662, 703 [1975], cert. denied, 425 U.S. 959 [1976]). We have considered evidence of the victim's violent temper and the fact that the defendant had no previous record and was a hard worker. *Commonwealth* v. *Seit*, 373 Mass. 83, 94-95 (1977). Each case depends on its peculiar facts. No one fact is conclusive. A most important consideration is whether the jury verdict is markedly inconsistent with verdicts returned in similar cases. In such circumstances, rule 25 (b) (2) offers a means of rectifying disproportionate verdicts where previously trial judges had only the option of granting a new trial to cure the inequity. See *Commonwealth* v. *McCarthy*, 375 Mass. 409, 412-413 (1978), where such a problem confronted the judge.

In our review of a judge's order under rule 25 (b) (2) that a finding of guilty be entered of a lesser offense, we should not engage in an independent analysis of the question.[10] In similar situations, we consider only whether the judge abused his discretion or committed an error of law. See *Commonwealth* v. *Cook,* 380 Mass. 314, 321 (1980); *Commonwealth* v. *McCarthy, supra* at 414-415. Rule 25 (b) (2) places the matter in the hands of the judge who heard the witnesses, and we should not undertake to substitute our judgment for his. We review the judge's order in accord with this principle.

The judge concluded, on a review of the evidence, that, although "a verdict of murder in the second degree was warranted by the evidence, a verdict of manslaughter would have comported more closely with the weight of the evidence." He recognized that, although the defendant, who lived with the victim as husband and wife, had left the bedroom to procure a knife, there was fear of sudden attack or of immediate aggression. The victim, who was six feet five inches tall and weighed about 265 pounds, had severely beaten the defendant many times before. The defendant was five feet eleven inches tall and weighed 138 pounds. The judge concluded that the weight of the evidence tended to establish that the killing was not carried out with malice aforethought. He concluded that a manslaughter verdict "would have been more consonant with the interest of justice."

From our reading of the transcript, we conclude that the judge acted within his discretion in reaching his decision. The defendant was asleep when the victim came home. He woke her up and started shaking her. The victim had a reputation for violence. There was an argument. The victim called the defendant a "whore" and threatened her. She pushed him into a chair and went for the knife. This sudden response to the victim's aggression suggests a response

---

[10] If, of course, a judge declined to reduce a verdict to the level sought by a defendant and the case were one in which this court had the duty to consider the appeal under § 33E, we would engage in an independent analysis of the question whether a lesser verdict of guilt should be entered.

in the heat of uncontrolled anger. It is likely that the defendant's conduct was influenced by her consumption of alcohol. We accept the reasonableness of the judge's decision to order the entry of a finding of guilty of manslaughter.[11]

## CONCLUSION

We answer the reported question in the affirmative. Judgment shall be entered in the county court vacating the stay of the trial judge's order of September 9, 1980, and affirming that order, which set aside the verdict of guilty of murder in the second degree and entered a finding of guilty of manslaughter. On the defendant's appeal, the conviction of manslaughter is affirmed.

*So ordered.*

LIACOS, J. (concurring). In so far as the majority hold that the Commonwealth has a right to appeal from the allowance of a motion under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), I dissent from the majority's opinion for the same reasons I dissented in *Commonwealth* v. *Therrien, supra*. In all other respects, including the disposition of this case, I join with the majority.

---

[11] Because we accept the manslaughter verdict, we need not consider under G. L. c. 278, § 33E, whether we should direct the entry of a lesser verdict of guilt. We could do so as to this second degree conviction because the crime occurred prior to the amendment that limited our § 33E function to first degree convictions. See *Commonwealth* v. *Davis*, 380 Mass. 1, 16 (1980).