## Commonwealth vs. Michael J. Lyons.

Plymouth. February 8, 2005. - May 20, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Verdict, Instructions to jury, Lesser included offense. *Homicide. Malice. Evidence,* Relevancy and materiality, Photograph, Death certificate.

This court concluded that a Superior Court judge abused her discretion in granting a criminal defendant's motion pursuant to Mass. R. Crim. P. 25 (b) (2), seeking reduction of a verdict of murder in the second degree to involuntary manslaughter, where the weight of the evidence introduced at trial, which demonstrated that the defendant shook the victim, a two week old infant, with a degree of force hard enough to shake a grown man and that the defendant knew that such an action would cause the child harm, clearly supported a verdict of murder in the second degree based on third prong malice, and where the reasons advanced by the judge in reaching her decision (including the lack of any evidence that the defendant had inflicted prior abuse on the victim or any of his other children, and the brief duration of his culpable conduct) did not provide an adequate basis for reducing the verdict. [291-297] Cordy, J., dissenting, with whom Marshall, C.J., and Cowin, J., joined.

The judge at a murder trial did not abuse her discretion in admitting in evidence autopsy photographs of the victim, where the photographs were relevant to establishing the severity of the victim's injuries and the amount of force used to inflict them, a critical issue in the case. [297-299]

The criminal defendant at a murder trial failed to demonstrate that the judge erred in her instructions to the jury on the third prong of malice. [299]

At a criminal trial where the defendant was charged with the murder of his infant son, the judge's refusal to admit in evidence the death certificate of the defendant's older son, offered by the defendant to demonstrate that the older son had died of natural causes, was well within the judge's discretion, where there was no insinuation at trial that the defendant had anything to do with the older son's death, where the judge offered to instruct the jury that there was no issue regarding the older son's cause of death, and where permitting inquiry into such a wholly unrelated matter presented a risk of confusing the jury. [299-300]

INDICTMENT found and returned in the Superior Court Department on September 11, 1998.

The case was tried before *Linda E. Giles,* J., and a motion

seeking reduction of the verdict, filed on July 31, 2001, was heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

*Paul J. McManus*, Committee for Public Counsel Services, for the defendant.

IRELAND, J. After a jury convicted the defendant of murder in the second degree for the shaking death of his two week old son, he filed a motion pursuant to Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), seeking reduction of the verdict. The trial judge reduced the verdict to involuntary manslaughter, which the Appeals Court upheld on appeal. *Commonwealth* v. *Lyons*, 61 Mass. App. Ct. 1103 (2004). The Commonwealth appeals from the judge's order reducing the verdict. The defendant appeals from his conviction and now asks this court to order a new trial, raising a number of errors, but waives them if we should uphold the judge's reduction of the verdict from murder to involuntary manslaughter. We granted the Commonwealth's application for further appellate review. Because we conclude that the judge abused her discretion in reducing the verdict to manslaughter and that there is no merit in the defendant's allegations of error, we affirm the conviction of murder in the second degree and vacate the order reducing the degree of guilt.

*Facts.*

On the afternoon of June 28, 1998, the victim, a two week old infant boy, was rushed to Good Samaritan Hospital and was then "med flighted" to New England Medical Center in Boston, where he died as a result of "severe cerebral edema and subdural hematomas due to shaking." The victim had bruises on his upper back muscles just below the neck on both sides. His body showed all the signs of shaken baby syndrome, which "essentially destroyed his brain."[1] The defendant, an approximately five foot, eight inch tall man weighing between 275 and 300 pounds, admitted to holding the victim's body with his hands

---

[1] There was bleeding on the surface of the victim's brain and inside the brain itself. The victim's brain was soft and swollen. Additionally, there was injury to the nerves in the victim's brain.

underneath the victim's armpits and shaking him with enough force to shake a 215 pound man.[2] Given the severity of the victim's injuries, he would have lost consciousness and become unresponsive "[n]early instantaneously or within a very few seconds." The defendant admitted shaking the victim, but claimed that he did so in a panic to revive him. The crux of his defense was that he had acted without legal malice.

*Discussion.*

1. *The Commonwealth's appeal.* "Pursuant to rule 25 (b) (2), a trial judge has the authority to reduce a verdict, despite the presence of evidence sufficient to support the jury's original verdict." *Commonwealth* v. *Rolon*, 438 Mass. 808, 820 (2003), citing *Commonwealth* v. *Woodward*, 427 Mass. 659, 666-667 (1998), and cases cited. This authority is similar to our power to review capital cases under G. L. c. 278, § 33E, and a trial judge's decision on a rule 25 (b) (2) motion "should be guided by the same considerations." *Commonwealth* v. *Gaulden*, 383 Mass. 543, 555 (1981). The purpose of such postconviction powers is "to ensure that the result in every criminal case is consonant with justice." *Commonwealth* v. *Woodward*, *supra* at 666. In exercising this power, the judge is required "to consider the whole case broadly to determine whether there was any miscarriage of justice" (quotations omitted). *Commonwealth* v. *Jones*, 366 Mass. 805, 807 (1975), and cases cited. As we have previously cautioned, "judge[s] should use this power sparingly," *id.* at 667, and not sit as a "second jury." *Commonwealth* v. *Keough*, 385 Mass. 314, 321 (1982). However, we will disturb a judge's order reducing a verdict only where the judge abused his discretion or committed an error of law. *Commonwealth* v. *Woodward*, *supra* at 668, quoting *Commonwealth* v. *Millyan*, 399 Mass. 171, 188 (1987).

A judge's discretion to reduce a verdict is appropriately exercised where the weight of the evidence in the case points to a lesser crime even though it is technically sufficient to support

---

[2]Although the defendant claimed that the shaking went on for five to fifteen minutes, an expert on shaken baby syndrome testified that there was no way a perpetrator could sustain the type of necessary vigorous shaking for longer than twenty seconds at most. To inflict such injury, typically, the shaking would have to go on from three to twenty seconds.

the jury's verdict. *Commonwealth* v. *Rolon, supra* at 821. Accordingly, to justify a reduction in the verdict, there must be some weakness in the critical evidence, see *Commonwealth* v. *Ghee,* 414 Mass. 313, 322 (1993) (verdict reduction appropriate where evidence of premeditation "slim"); *Commonwealth* v. *Millyan, supra* at 188-189 (verdict reduction appropriate where evidence of intoxication undermined theory of deliberate premeditation); *Commonwealth* v. *Gaulden, supra* at 557-558 (verdict reduction appropriate where evidence showed victim was first aggressor and defendant's conduct likely was influenced by alcohol); *Commonwealth* v. *Jones, supra* at 808 (verdict reduction appropriate where evidence of intoxication and sudden combat negated malice element), or some weakness in the evidence coupled with trial error. See *Commonwealth* v. *Woodward, supra* at 671 (although evidence suggested defendant did not act with malice, jury not instructed on manslaughter); *Commonwealth* v. *Millyan, supra* (although there was evidence of intoxication, jury not instructed on issue of impairment due to intoxication). However, a judge is not justified in reducing "to a lesser verdict that would be inconsistent with the weight of the evidence," nor in basing reduction "solely on factors irrelevant to the level of the offense proved." *Commonwealth* v. *Rolon, supra* at 822, and cases cited.

Therefore, we look to determine whether there was some weakness in the evidence that the defendant committed murder in the second degree, or evidence suggesting that he more likely committed involuntary manslaughter. If, as we conclude, the weight of the evidence is entirely consistent with murder in the second degree based on third prong malice, it was an abuse of discretion to reduce the verdict.

Here, the judge provided a written memorandum of decision outlining her reasons for reducing the verdict to involuntary manslaughter. See *Commonwealth* v. *Gaulden, supra* at 556 (judge should state reasons for reducing verdict). Those reasons were a lack of any evidence that the defendant had inflicted prior abuse or injuries on any of his children, especially the victim; the defendant's culpable conduct consisted of one violent shaking lasting "only a few seconds," while under the sway of

painful memories of his other son's death[3]; the defendant was not a vicious man but one who succumbed to the frailty of the human condition and committed a momentary act of "extraordinarily poor judgment"; and the defendant was a steady worker with no prior criminal record. These reasons do not provide an adequate basis for reducing the verdict from murder in the second degree to involuntary manslaughter. Moreover, the judge outlined the evidence that would tend to comport more with murder than manslaughter, but failed to mention how the evidence supporting manslaughter made a manslaughter verdict more consonant with justice.

A fine line distinguishes murder in the second degree based on third prong malice from the lesser included offense of involuntary manslaughter. See *Commonwealth* v. *Skinner*, 408 Mass. 88, 93 (1990), and cases cited. "Without malice, an unlawful killing can be no more than manslaughter." *Commonwealth* v. *Judge*, 420 Mass. 433, 437 (1995), and cases cited. "The difference between the elements of the third prong of malice and . . . involuntary manslaughter lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew. The risk for the purposes of third prong malice is that there was a plain and strong likelihood of death. . . . The risk that will satisfy the standard for . . . involuntary manslaughter 'involves a high degree of likelihood that substantial harm will result to another.' " *Commonwealth* v. *Sires*, 413 Mass. 292, 303-304 n.14 (1992), quoting *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). In this case, the jury received instructions on both murder in the second degree based on third prong malice and involuntary manslaughter. As the jury convicted the defendant of murder in the second degree, they must have found that in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that the victim's death would follow the defendant's actions.

The judge's emphasis on the lack of evidence that the

[3]The defendant had a son, Andrew, who died of natural causes when he was approximately one year old. The defendant found the child dead in his crib.

defendant had previously abused or injured any of his other children was misplaced — that the defendant ostensibly did not abuse the other children is irrelevant to the nature of the risk posed by his abuse of the victim.[4] The judge also relied on the fact that the defendant had not abused the victim previously. The victim was only fourteen days old when he was killed, and this was the first time that the defendant had been alone with the victim. Thus, we do not find solace, as did the judge, in the fact that the defendant did not previously abuse the victim.

That the episode was brief does not create a weakness in the evidence of third prong malice. Although even evidence of repeated blows does not necessarily require a finding of malice, *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 397-398 (1998), *S.C.*, 431 Mass. 360 (2000), evidence of a single blow to a young child may be sufficient to support a jury's finding of malice. *Commonwealth* v. *Starling*, 382 Mass. 423, 426 (1981). This case is unlike the *Woodward* case, where the victim lived for five days after the injury was inflicted, the defendant denied shaking the victim, both the medical evidence and the cause of injury were controverted, and of particular importance, the jury had not even been given the option of convicting on the lesser included offense of manslaughter (an error which, by itself, would have required a new trial). See *Commonwealth* v. *Woodward*, *supra* at 660, 670-671. Here, the defendant admits that he shook the victim hard enough to shake a 215 pound man and that he knew that shaking a child could cause harm. There was a plain and strong likelihood of death in a 300 pound man shaking a two week old, seven and one-half pound infant with that degree of force. Additionally, unlike *Commonwealth* v. *Woodward*, *supra*, there is no concern that the jury's finding of third prong malice has been tainted by any error in instruction — this jury was given the option of convicting the defendant of the lesser included offense of manslaughter, and was properly instructed on the difference between murder and manslaughter.

Furthermore, the judge's conclusion that the culpable conduct consisted only of one violent shaking that lasted only a few seconds misstates the evidence. The judge stated that it *"was*

---

[4]There was in fact evidence that the defendant was overly forceful with his older children.

clear" that the victim "was shaken violently for approximately three to five seconds" and then referred to the shaking as lasting "only a few seconds." The only testimony regarding how long the shaking occurred was from the defendant and an expert on shaken baby syndrome. The defendant claimed that he shook the victim for five to fifteen minutes. However, the expert testified that it would be physically impossible for anyone to sustain that forceful a shaking for more than twenty seconds. Rather, the expert stated that such vigorous shaking would likely occur from three to twenty seconds. As the expert could not pinpoint the exact time of shaking, it was error for the judge simply to pick the lower amount of time suggested by the expert, particularly when the defendant testified that the shaking occurred for much longer. Thus, the evidence readily supports the conclusion that this shaking continued for a period of time closer to twenty seconds. Coupled with the expert testimony that the victim would have lost consciousness "[n]early instantaneously," the evidence suggests that the shaking of the victim continued well past the point in time when his injury was manifest — the forceful shaking of an infant who is already so severely injured is conduct that raises a plain and strong likelihood of death.

Additionally, the judge noted that the defendant's culpable conduct may have resulted from painful memories of the death of another son. See note 3, *supra.* The judge could find this only by crediting the defendant's testimony. While a "judge is not foreclosed from considering the defendant's testimony . . . and, if he believes it, relying on it," *Commonwealth* v. *Keough,* 385 Mass. 314, 321 (1982), it is not clear from the judge's memorandum that she did in fact believe the defendant's testimony. The judge noted that the defendant gave "several conflicting and implausible accounts" of what occurred.[5] At the trial, the defendant maintained that he shook the victim because the victim appeared to be in distress after hitting his head in the tub when the defendant was giving him a bath. Specifically, the defendant claimed that the victim was having difficulty breathing and his eyes were either dilated or half open. However, the uncontroverted medical testimony establishes that such a fall

---

[5]The judge did not specify what she found implausible.

would not produce the symptoms described by the defendant. Additionally, there was no sign of injury to the back of the victim's head. Indeed, the only external injury found on the victim was an abrasion on his forehead without bruising. Finally, there was no evidence, other than the defendant's testimony, that he in fact gave the victim a bath; rather, the police officer who responded to the scene testified that the bathtub was dry. Where there is uncontroverted testimony discrediting the defendant's account and the judge acknowledges that the defendant gave "implausible" accounts, we conclude that the judge could not rely on the defendant's testimony as a ground to reduce the verdict. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 189 (1987).

The judge's reliance on her finding that the defendant was not a vicious man but one who succumbed to the frailty of the human condition and committed a momentary act of "extraordinarily poor judgment" was irrelevant to the consideration of third prong malice. The only consideration was what the defendant knew the circumstances to be, and it is uncontroverted that the defendant knew he was vigorously shaking the victim. Based on the defendant's knowledge, there was a plain and strong likelihood that the victim would die from the shaking.

The other factors relied on by the judge — the defendant's being a steady worker with no prior criminal record who enjoyed the support of his wife, the victim's mother — are insufficient to justify reduction of the verdict. Although a defendant's personal circumstances may be considered in conjunction with evidence that points to a lesser degree of guilt, personal circumstances alone do not justify reduction of a verdict. *Commonwealth* v. *Rolon*, 438 Mass. 808, 825 (2003), and cases cited.

The judge also noted that the jury may have been unduly affected by the image of a 300 pound adult man shaking a vulnerable seven pound baby. We disagree. Both the defendant's size and the victim's age and size were relevant to show that the victim was especially frail and susceptible to death at the hands of an adult. Moreover, the size of both could properly suggest that the injuries inflicted by the defendant, when viewed in light

of the victim's tender age and size, were life threatening in an objective sense, which is relevant to the third prong malice issue. See *Commonwealth* v. *Vizcarrondo*, 431 Mass. 360, 363 (2000). The vast discrepancy in size and strength is what makes it evident that the defendant's conduct posed a plain and strong likelihood of death. That it tended to prove the Commonwealth's case does not make it prejudicial, or provide a basis for reducing the jury's verdict.

As there was no error of law or substantial risk of a miscarriage of justice in the jury's verdict, the judge abused her discretion in reducing the verdict to involuntary manslaughter where the weight of the evidence clearly supported a verdict of murder in the second degree.

2. *The defendant's appeal.* Because we reverse the judge's order reducing the verdict to involuntary manslaughter and reinstate the verdict of murder in the second degree, we address the defendant's appeal from his conviction. The defendant argues that the judge erred by (1) admitting three photographs depicting the victim after surgical alteration of his body where the cause of death was not a contested issue at trial; (2) failing to instruct the jury that malice requires proof that the defendant was aware of the life-endangering risk posed by his conduct; and (3) sustaining the prosecution's objection to the introduction of the death certificate of the defendant's son Andrew. We disagree.

a. *Admission of autopsy photographs.* At trial, the Commonwealth introduced three autopsy photographs of the victim over the defendant's objections. The defendant now argues that the judge abused her discretion in admitting the photographs where the cause of death was not contested and the photographs did not depict the victim's injuries.[6] We disagree.

As we have previously stated, "whether the inflammatory quality of a photograph outweighs its probative value and precludes its admission is determined in the sound discretion of the trial judge." *Commonwealth* v. *DeSouza*, 428 Mass. 667,

---

[6]The first picture showed the victim's skull after the skin had been peeled back and the top of the skull had been removed. The next picture showed the back of the victim after the skin had been peeled back to expose the trapezia muscles. The final picture depicted the back of the victim's head.

670 (1999), and cases cited. Generally, this is true even where the defendant agrees to stipulate to the facts that the photograph tends to prove. *Commonwealth* v. *Nadworny*, 396 Mass. 342, 367 (1985), cert. denied, 477 U.S. 904 (1986). However, if apt to be inflammatory or otherwise prejudicial, autopsy photographs showing the body as altered during the autopsy should be admitted only if relevant to the resolution of a contested issue. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980).

The judge admitted the photographs only after the Commonwealth had laid a foundation indicating that the photographs were relevant to establishing the severity of the victim's injuries. The defendant argues that this was an abuse of discretion because the nature, extent, and cause of the fatal injuries were not issues before the jury. While we agree with the defendant that the photographs were disturbing, we do not agree that they lacked relevance. A critical issue in the case was the amount of force used to shake the victim. As the nature of the injuries supported an inference concerning the amount of force used to inflict the injuries, the photographs were relevant to that issue. Additionally, the final photograph admitted, showing no injury to the back of the victim's head, was relevant to contradict the defendant's testimony that the victim hit his head in the bathtub. Furthermore, the judge appropriately mitigated any potential prejudice by cautioning the jury not to be affected by the nature of the photographs, and by instructing them that the photographs were to be used only to draw attention to a clinical medical status or the nature and extent of the victim's injuries.

"In order to find an abuse of discretion, 'it is necessary to decide that no conscientious judge, acting intelligently, could honestly have taken the view expressed by [her].' " *Commonwealth* v. *Jaime*, 433 Mass. 575, 579 (2001), quoting *Commonwealth* v. *Medeiros*, 395 Mass. 336, 351 (1985). This is a heavy burden that the defendant has failed to meet in this case. The judge's decision to admit three autopsy photographs in this case was not an abuse of discretion, but instead a reasonable ruling that allowed the Commonwealth to explain the significance of the autopsy findings. *Commonwealth* v. *Boateng*, 438 Mass. 498, 507 (2003). See *Commonwealth* v. *Urrea*, 443 Mass. 530, 545 (2005), and cases cited (no abuse of discretion admit-

ting photograph depicting victim with suturing across chest and intubation tube in place where relevant to issue of extreme atrocity or cruelty).

b. *Third prong malice instruction.* The defendant argues that the judge erred in failing to instruct that subjective awareness of the risk of death is required for a murder conviction. This argument is without merit, as a murder conviction based on third prong malice requires only that "in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Woodward*, 427 Mass. 659, 669 n.14 (1998), quoting *Commonwealth* v. *Sneed*, 413 Mass. 387, 388 n.1 (1992). Thus, it is not required that the defendant subjectively know that his actions would create a substantial risk of death. It is enough that based on what the defendant knew, a reasonable person would objectively realize the risk of death. We have repeatedly rejected similar arguments, see, e.g., *Commonwealth* v. *Riley*, 433 Mass. 266, 273 (2001) (rejecting claim that third prong malice did not sufficiently require morally culpable state of mind); *Commonwealth* v. *Starling*, 382 Mass. 423, 427-429 (1981) (rejecting argument that third prong malice should require actual subjective foresight by defendant), and affirmed that the primary distinction between third prong malice and involuntary manslaughter is the degree of risk that was apparent from the defendant's conduct. See, e.g., *Commonwealth* v. *Azar*, 435 Mass. 675, 681-684 (2002); *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 394-397 (1998); *Commonwealth* v. *Sanna*, 424 Mass. 92, 105 (1997); *Commonwealth* v. *Sires*, 413 Mass. 292, 303-304 n.14 (1992).

c. *Exclusion of death certificate.* Last, the defendant argues that the judge erred in excluding the death certificate of the defendant's other son, Andrew. At trial, the defendant attempted to admit the death certificate, which stated the cause of death as myocarditis. The judge sustained the Commonwealth's objection, finding it a collateral issue, but offered to instruct the jury

that Andrew's death was not an issue in the case.[7] The defendant, however, argues that the offered limiting instruction was not an acceptable alternative and could not compensate for the lack of extrinsic evidence that Andrew died of natural causes.

"Where there is a risk of confusing the jury, the judge must weigh the probative value of any proffered evidence against such danger." *Commonwealth* v. *Ellis*, 432 Mass. 746, 758 (2000), citing *Commonwealth* v. *Rosa*, 422 Mass. 18, 25 (1996). Here, the judge did not abuse her discretion. Contrary to the defendant's claim, there was no insinuation that the defendant had anything to do with Andrew's death. Rather, the jury heard uncontroverted testimony that Andrew's cause of death was myocarditis, and the judge offered to instruct the jury that there was no issue regarding his cause of death. The prosecutor's comments regarding Andrew's death were proper and did not, as the defendant alleges, "impl[y] that dark forces may have been at work in Andrew's death." As the defendant relied on the memory of Andrew's death as ostensibly causing him to panic and shake the victim, it was proper and necessary for the prosecutor to comment on this defense. However, at no time did the prosecutor imply or state that Andrew died from anything other than natural causes.

"[W]e give broad discretion to trial judges who have valid concerns about trying a case within a case." *Commonwealth* v. *Ellis*, *supra* at 758-759, citing *Commonwealth* v. *Franklin*, 366 Mass. 284, 289 (1974). By permitting inquiry into the wholly unrelated matter of the cause of Andrew's death, the judge risked distracting the jury. Accordingly, the judge's refusal to admit the death certificate was well within her discretion.

*Conclusion.*

Because we conclude that the judge abused her discretion in reducing the verdict to involuntary manslaughter where the weight of the evidence clearly supported murder in the second degree, and the defendant's claims of error lack merit, we vacate

[7]The Commonwealth's objection was based on the fact that the medical examiner had recently reviewed the case and determined that Andrew did not die from myocarditis. At the time of trial the medical examiner's office was not able to determine a definitive cause of death other than natural causes.

the order reducing the verdict and affirm the conviction of murder in the second degree.

*So ordered.*

CORDY, J. (dissenting, with whom Marshall, C.J., and Cowin, J., join). "In a noncapital case such as this, we do not conduct an independent analysis when a trial judge reduces a verdict to a lesser offense." *Commonwealth* v. *Woodward*, 427 Mass. 659, 668 (1998) (*Woodward*). The judge "has the advantage of face to face evaluation of the witnesses and the evidence at trial" and is thus "in a far better position than we are to make the judgment required by [Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979)]." *Commonwealth* v. *Cobb*, 399 Mass. 191, 192 (1987). Consequently, our consideration of a judge's decision to reduce a verdict is limited to "whether the judge abused his discretion or committed an error of law." *Commonwealth* v. *Gaulden*, 383 Mass. 543, 557 (1981). The court concludes that the judge abused her discretion in reducing the verdict from murder in the second degree to involuntary manslaughter. In my view, it reaches this conclusion by simply substituting its judgment for that of the judge who saw and heard the evidence. While we might not have decided the matter as the trial judge did, that is not a proper application of the deferential standard that we profess to apply to such decisions. Because I perceive nothing other than a conscientious judge acting to ensure that justice was more nearly achieved by intelligently and honestly assessing both the weight of the evidence on a determinative element of the crime, and whether the verdict was disproportionate, I respectfully dissent.

As we noted in *Woodward*, *supra* at 670, quoting *Commonwealth* v. *Sires*, 413 Mass. 292, 303-304 n.14 (1992), the difference between the elements of third prong malice (murder in the second degree) and manslaughter "lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew. The risk for the purposes of the third prong of malice is that there was a plain and strong likelihood of death. . . . The

risk that will satisfy the standard for . . . involuntary manslaughter 'involves a high degree of likelihood that substantial harm will result to another.' " This is a very fine line, and the judge weighed the evidence with that in mind. She found that its weight was more consistent with wilful and wanton conduct (involuntary manslaughter) than with third prong malice. She did so by considering all the evidence, taken together, including that of the Commonwealth's experts and of the defendant, which she was fully entitled to do. *Commonwealth* v. *Keough*, 385 Mass. 314, 321 (1982) (defendant's testimony can be considered, and if believed, relied on by judge in reducing verdict). See *Woodward*, *supra* at 668-669.[1] She found that the defendant's conduct likely consisted of a single shaking lasting a few seconds, possibly "under the sway of the painful memories" of the death of another of his children.[2] She also considered her knowledge of other murder and manslaughter verdicts in the Commonwealth involving fatal batteries on children, and the familiar pattern of repeated prior injuries or caretaker abuse found in those cases but not in this one.[3]

In the end, she concluded that "[t]his was a tragic case of an overwhelmed father and husband who, alone and unaccustomed

[1]The court finds that the judge could not rely on Lyons's testimony as a ground to reduce the verdict because uncontroverted testimony at trial discredited Lyons's account of the events of June 28, 1998, and because the judge acknowledged Lyons's "implausible" accounts to the police and paramedics. *Ante* at 295-296. Nothing in our case law, however, suggests that a judge is not permitted to credit some, but not all, of a defendant's testimony, in deciding on a motion under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), just as any factfinder is entitled to do when evaluating the testimony of any other witness.

[2]The court cites *Commonwealth* v. *Starling*, 382 Mass. 423, 426 (1981), for the proposition that "evidence of a single blow to a young child may be sufficient to support a jury's finding of malice." *Ante* at 294. The victim's death in that case, however, was caused not by shaking, but rather by "one or more 'very severe' blows to the chest or abdomen with a blunt instrument such as a fist, a foot, or a board." *Commonwealth* v. *Starling*, *supra* at 425.

[3]In *Commonwealth* v. *Woodward*, 427 Mass. 659, 670 (1998) (*Woodward*), we held that the judge did not abuse his discretion in concluding that the jury verdict of murder in the second degree was not proportionate with convictions in similar cases, where there was no evidence of repeated caretaker abuse in that case. Here, similarly, the judge reasonably relied on "the lack of any evidence that the defendant had inflicted any prior abuse or injuries on any of his children, especially [the victim]."

to the difficult task of caring for a newborn infant, reacted to a stressful situation with lamentable panic and confusion," and that the defendant "succumbed to the frailty of the human condition, see *Commonwealth* v. *Bearse*, 358 Mass. 481, 487 (1970), and committed a momentary act of 'extraordinarily poor judgment,' *Commonwealth* v. *Kinney*, 361 Mass. 709, 713 (1972); *Commonwealth* v. *Baker*, 346 Mass. 107, 118 (1963)." All of these conclusions find support in the evidence, and not just in the defendant's testimony. And all bear on the weight of the case on the question of malice.

The court weighs the evidence differently from the trial judge, concluding that it "clearly supported a verdict of murder in the second degree." *Ante* at 297. This is not our role. While there is little doubt that the evidence supported the jury's verdict of murder in the second degree, that is neither the test nor the standard under rule 25 (b) (2). See *Woodward, supra* at 666 ("the responsibility [under rule 25 (b) (2)] may be exercised by the trial judge, even if the evidence warrants the jury's verdict"); *Commonwealth* v. *Gaulden, supra* at 555 (rule 25 [b] [2] "empower[s] a judge . . . to 'order the entry of a finding of guilty of any offense included in the offense charged in the indictment,' without regard to the fact that the evidence warranted the jury's verdict of guilty of the greater offense"). In our constrained assessment of a verdict reduction under that rule, we are not to reweigh the evidence and second guess the trial judge's assessment of it. "Rule 25 (b) (2) places the matter in the hands of the judge who heard the witnesses, and we should not undertake to substitute our judgment for [hers]." *Id.* at 557.

We have consistently followed this admonition until now. Since 1979, when the Legislature amended G. L. c. 278, § 11 (now embodied in rule 25 [b] [2]), to grant trial judges the power to enter a finding of guilty of any lesser included offense in criminal cases, appellate courts have reversed verdict reductions on only three occasions.[4] On each occasion, the judge was

---

[4]The power to reduce verdicts is sparingly exercised by trial judges. In the past twenty-six years, the Commonwealth has appealed from such reductions in only thirteen cases: *Commonwealth* v. *Rolon*, 438 Mass. 808 (2003) (order

reversed because the reason for reducing the verdict was not germane to the weight of the evidence on the charged offense. See *Commonwealth* v. *Rolon,* 438 Mass. 808, 822-825 (2003) (reversing order reducing verdict from felony-murder in first degree to murder in second degree where judge invoked irrelevant theory of provocation and improperly rejected doctrine of joint venture); *Commonwealth* v. *Sabetti,* 411 Mass. 770, 780-781 (1992) (reversing order reducing verdict from trafficking in cocaine to possession of cocaine with intent to distribute where judge found that defendant did not know that he possessed over twenty-eight grams of cocaine, fact irrelevant to crime for which he was convicted); *Commonwealth* v. *Burr,* 33 Mass. App. Ct. 637, 639-643 (1992) (reversing order reducing verdicts from trafficking in cocaine to possession of cocaine with intent to distribute based on trial judge's apparent disagreement with harshness of mandatory minimum sentence required by trafficking conviction, and where weight of cocaine was undisputed at trial). This is not such a case. On no occasion has an appellate court decided to reweigh evidence that it never heard in the first instance, and to reverse a judge's

reducing verdict from felony-murder in first degree to murder in second degree reversed); *Woodward, supra* (order reducing verdict from murder in the second degree to involuntary manslaughter affirmed); *Commonwealth* v. *Ghee,* 414 Mass. 313 (1993) (order reducing verdict from murder in first degree to murder in second degree affirmed); *Commonwealth* v. *Sabetti,* 411 Mass. 770 (1992) (order reducing verdict from trafficking in cocaine to possession with intent to distribute reversed); *Commonwealth* v. *Aguiar,* 400 Mass. 508 (1987) (issue of verdict reduction not decided where defendant's conviction of murder in first degree reversed on other grounds); *Commonwealth* v. *Cobb,* 399 Mass. 191 (1987) (order reducing verdict from murder in second degree to manslaughter affirmed); *Commonwealth* v. *Millyan,* 399 Mass. 171 (1987) (order reducing verdict from murder in first degree to murder in second degree affirmed); *Commonwealth* v. *Keough, supra* (order reducing verdict from murder in second degree to manslaughter affirmed); *Commonwealth* v. *Gaulden,* 383 Mass. 543 (1981) (order reducing verdict from murder in second degree to manslaughter affirmed); *Commonwealth* v. *Lamar L.,* 61 Mass. App. Ct. 1121 (2004) (order reducing verdicts of youthful offender to findings of delinquency affirmed); *Commonwealth* v. *Burr,* 33 Mass. App. Ct. 637 (1992) (order reducing verdict from trafficking in cocaine to possession with intent to distribute reversed); *Commonwealth* v. *Greaves,* 27 Mass. App. Ct. 590 (1989) (order reducing verdict from murder in second degree to manslaughter affirmed); *Commonwealth* v. *Zitano,* 23 Mass. App. Ct. 403 (1987) (order reducing verdict from murder in second degree to manslaughter affirmed).

carefully articulated decision on that basis.[5]

The court notes that the authority given trial judges by rule 25 (b) (2) is "similar to our power to review capital cases under G. L. c. 278, § 33E, and a trial judge's decision on [such a motion] 'should be guided by the same considerations.' " *Ante* at 291, quoting *Commonwealth* v. *Gaulden, supra* at 555. While this is a fair enough statement of the law, the court seems to have forgotten an observation made a long time ago: "[U]nder § 33E review, this court has proceeded . . . with the disadvantage of not seeing and hearing the witnesses. . . . A trial judge does not have that disadvantage" (citation omitted). *Commonwealth* v. *Gaulden, supra* at 554. Even with that disadvantage, the court, in *Commonwealth* v. *Kinney*, 361 Mass. 709, 713 (1972), saw its way clear to reduce two convictions of murder in the second degree (where the weapon used was a handgun) to involuntary manslaughter, when it concluded that the weight of the evidence was "that [the defendant] was confused and frightened rather than enraged." It is hard to say that the judge here was not "guided by the same considerations," having the further advantage of actually seeing and hearing the witnesses.

Although the evidence was sufficient to warrant the jury's verdict as a matter of law, *Commonwealth* v. *Gaulden, supra* at 553-555, there was no abuse of discretion in the judge's decision that justice would be more nearly achieved if the verdict was reduced from murder in the second degree to involuntary manslaughter.

---

[5]The appellate courts have affirmed verdict reductions on nine occasions, without disturbing the judges' assessment of the weight of the evidence. In *Commonwealth* v. *Aguiar, supra*, this court considered but did not decide the verdict reduction issue, as the conviction was reversed on other grounds. See note 4, *supra*.