**Michael LYONS, Petitioner,**

v.

**Bernard BRADY, Respondent.**

**Civil Action No. 06–10968–NMG.**

United States District Court,
D. Massachusetts.

Nov. 21, 2008.

Eva M. Badway, Attorney General's Office, Boston, MA, for Respondent.

Paul J. McManus, Committee for Public Counsel Services, Boston, MA, for Petitioner.

## MEMORANDUM & ORDER

GORTON, District Judge.

The petitioner, Michael Lyons ("Lyons"), seeks federal habeas corpus relief from his conviction for murder in the second degree. He alleges that his right to due process was violated by the admission of autopsy photographs of the victim at trial.

### 1. *Background*

#### A. Factual Background

On July 13, 2001, Lyons was found guilty in Plymouth Superior Court of shaking his two-week-old son, Jacob, to death. Lyons admitted to the fatal shaking at trial where the only contested issue was his intent in doing so. Defense counsel argued that Lyons did not intend to harm his son but rather acted out of panic. Lyons testified that he had lost his grip while bathing Jacob, causing the baby to bump his head. That, in turn, caused the baby's breathing to become stressed and his eyes unfocused. Lyons had previously lost an infant son to an untimely death caused by myocarditis and claimed he feared that Jacob would suffer the same

fate. Lyons, therefore, shook the baby allegedly to try to revive him.

The prosecution's theory at trial was that Lyons acted out of anger after arguing with his wife a few hours before the shaking incident. In support of that theory, the prosecution sought to introduce three photographs taken from the baby's autopsy, one showing his head with the skin peeled back, another with the top of his skull removed and another with his back muscles exposed after removal of the skin. The photographs were admitted, over defense counsel's vehement objection, with a limiting instruction that they could be used only as they "may draw attention to a clinical medical status or to the nature and extent of the alleged victim's injuries".

## B. Procedural History

After being convicted of second degree murder, Lyons filed a motion pursuant to Mass. R.Crim. P. 25(b)(2) seeking entry of a finding of guilty of a lesser included offense. The trial judge allowed that motion and entered a verdict of guilty of involuntary manslaughter. The Massachusetts Appeals Court affirmed the trial judge's order but the Supreme Judicial Court ("the SJC") vacated it and affirmed the original verdict.

In June, 2006, Lyons filed a petition for habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("the AEDPA"), 28 U.S.C. § 2254(d). Lyons contends that his continued incarceration by the respondent, Bernard Brady ("Brady"), the Superintendent of Old Colony Correctional Center, is unconstitutional because the admission of the autopsy photographs at his trial violated his right to due process under the Fourteenth Amendment. In his view, the photographs were unconstitutionally inflammatory and prejudicial to the defendant. To support that conclusion, Lyons relies on the Tenth Circuit Court of Appeals decision, *Spears v.*

*Mullin,* which held that gruesome, postmortem photographs admitted during a sentencing proceeding (following the petitioner's first degree murder conviction) were so inflammatory as to "fatally infect[ ] the trial and deprive[ the defendants] of their constitutional rights to a fundamentally fair sentencing proceeding". 343 F.3d 1215, 1229 (10th Cir.2003), *cert. denied sub nom. Powell v. Mullin,* 541 U.S. 909, 124 S.Ct. 1615, 158 L.Ed.2d 255 (2004).

Lyons argues that the effect of the photographs was particularly damaging in light of the fine distinction the jury was asked to draw in considering whether Lyons was guilty of murder under a third-prong malice theory (requiring proof of a "plain and strong likelihood of death"), *Commonwealth v. Starling,* 382 Mass. 423, 416 N.E.2d 929, 931 (1981) (citation omitted), or of involuntary manslaughter (requiring proof of a battery that "endangers human life"), *Commonwealth v. Catalina,* 407 Mass. 779, 556 N.E.2d 973, 978 (1990).

The respondent opposes Lyons's petition, claiming that it is supported by no Supreme Court precedent as required under the AEDPA. In addition, respondent 1) argues that the petitioner has failed to demonstrate that his trial was so fundamentally unfair as to violate the Due Process Clause of the Fourteenth Amendment and 2) finds *Spears* to be inapposite here because in that case the photographs were not admitted at the trial but rather at the sentencing and as such their effect was especially shocking and prejudicial.

## C. The Report and Recommendation

This case was referred to United States Magistrate Judge Joyce London Alexander who issued a Report and Recommendation ("R & R") in May, 2008, recommending that Lyons's petition be denied. In reaching that conclusion, the Magistrate Judge

applied the standard of review set out in the AEDPA, which provides for the grant of a writ of habeas corpus where the state court decision at issue is

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

The Magistrate Judge concurred with the finding of the SJC that the photographs were relevant to show the amount of force used to shake the baby, as indicative of Lyons's intent at the time of the incident, and to rebut Lyons's claim that the baby hit his head on the bathtub. After citing to numerous cases from other circuits, the Magistrate Judge concluded that, because the photographs had substantial probative value, their admission did not render Lyons's trial fundamentally unfair. Moreover, the Magistrate Judge recognized that murder under a third-prong malice theory and involuntary manslaughter are, indeed, substantially similar but declined to afford that fact any weight, noting that the remedy for any resulting injustice lies with the Massachusetts legislature and not with the courts.

### D. The Petitioner's Objections to the R & R

Lyons objects to the findings in the R & R. He asserts that the Magistrate Judge should have applied a *de novo* standard of review rather than the standard invoked by AEDPA. He also disagrees with the Magistrate Judge's conclusion that the amount of force used to shake the baby was a contested issue in the case because Lyons had admitted at trial to shaking the baby, so there was no question as to how the baby's injuries were caused. Moreover, Lyons finds that the admission of the photographs was unnecessary because the prosecution produced a witness who testified about the baby's injuries, merely describing them without referring to the photographs.

### 2. *Legal Analysis*

#### A. Legal Standard

■ In a habeas corpus petition, any issues addressed by a state court are subject to the standard set forth in the AEDPA, 28 U.S.C. § 2254(d), and those not addressed by a state court are subject to *de novo* review. *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001).

This Court has held that "[e]videntiary rulings in state criminal trials violate due process only if they render those trials fundamentally unfair". *Sheffield v. Curran*, 645 F.Supp. 859, 861 (D.Mass.1986). That means a petitioner must demonstrate that an alleged evidentiary error "so infuse[d] the trial with inflammatory prejudice that it render[ed] a fair trial impossible". *Petrillo v. O'Neill*, 428 F.3d 41, 44 n. 2 (1st Cir.2005); *see also Romano v. Oklahoma*, 512 U.S. 1, 12, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). That is a "high hurdle". *DiBenedetto v. Hall*, 176 F.Supp.2d 45, 54–55 (D.Mass.2000) (citing cases); *see also Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (noting that the Supreme Court has "defined the category of infractions that violate fundamental fairness [guaranteed by the Due Process Clause] very narrowly"); *Fortini*, 257 F.3d at 47 (noting that "not every ad hoc mistake in applying state evidence rules, even in a murder case, should be called a violation of due process; otherwise every significant state court error in excluding evidence offered by the defendant would be a basis for undoing the conviction").

■ The Constitution does not prohibit all gruesome evidence from being admitted into a trial. *See, e.g., United States v. Sampson*, 335 F.Supp.2d 166, 181, 183

(D.Mass.2004) (admitting autopsy photographs as evidence of the nature of the victims' wounds, which was probative of the defendant's intent, even while "cognizant ... of due process concerns"). The First Circuit Court of Appeals has not specifically addressed the question of how to determine when the admission of evidence unconstitutionally infuses a trial with inflammatory prejudice. Other Courts of Appeals, however, have suggested that, for such a determination, the relevance of evidence can counterbalance its prejudicial or inflammatory effect. *See* Report and Recommendation on Pet. for Writ of Habeas Corpus at 9–10 (citing cases). This Court agrees with that analysis.

## B. Application

This Court also finds that, in light of the probative value of the three autopsy photographs, their admission did not so infuse petitioner's trial with inflammatory prejudice as to render it fundamentally unfair.

### 1. Relevance

■ First, the Court considers the photographs' relevance. The SJC determined that the photographs had significant probative value. *Commonwealth v. Lyons,* 444 Mass. 289, 828 N.E.2d 1, 9 (2005). The Court will, therefore, apply the deferential AEDPA standard to that issue and consider whether the SJC's decision regarding the relevance of the evidence was "contrary to, or involved an unreasonable application of" Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Lyons points to no such precedent, nor can he. Therefore, this Court accepts the SJC's opinion that the photographs were relevant at Lyons's trial.

The United States Supreme Court has held that "it is universally recognized" that evidence is relevant if it has

> any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence.

*New Jersey v. T.L.O.,* 469 U.S. 325, 345, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (citation omitted). The SJC concluded that the photographs were relevant to determine the amount of force used to shake the baby and to rebut Lyons's claim that the baby hit his head on the bathtub. *Lyons,* 828 N.E.2d at 9.

Lyons argues that the amount of force was not at issue in the case because he had admitted to shaking the baby and that only his intent at the time was contested. Thus, he implies that the photographs should have been deemed irrelevant because they pertained only to an inconsequential fact.

The amount of force Lyons used to shake the baby, however, could be probative of his intent, which was the most consequential question of fact before the jury. Presumably a lesser degree of force would "endanger human life", as required to satisfy the mens rea of involuntary manslaughter, than that which would cause "a plain and strong likelihood of death", as required to satisfy the mens rea of murder on a third-prong malice theory.

The degree of force used can, reputedly, be ascertained from the severity of injuries the baby suffered, which was evident only from the autopsy pictures. As the SJC noted, the photographs "allowed the Commonwealth to explain the significance of the autopsy findings". *Lyons,* 828 N.E.2d at 9. Moreover, the amount of force was, contrary to Lyons's assertion, contested at trial, i.e. Lyons testified that he shook his son for ten to fifteen minutes, whereas a prosecution witness, a clinical professor of pediatrics, testified that, at most, the shaking lasted twenty seconds.

In addition, whether the baby hit his head on the bathtub with sufficient force to

cause his breathing to become stressed and his eyes to become unfocused was an important issue in the case. If the incident did not occur as Lyons alleged, his claim that he shook the baby only to revive him would fail. The autopsy photographs assisted the jury in deciding that fact and thus were relevant to issue of Lyons's guilt or innocence. Therefore, this Court will affirm the SJC's determination that the photographs were relevant to assist the jury in making findings on contested and consequential issues of fact.

## 2. Unconstitutional Prejudice

■ Next, the Court considers whether the admission of the autopsy photographs was unconstitutional. In light of the fact that the SJC did not determine whether the petitioner's due process rights were violated by the admission of the photographs, this Court makes a *de novo* determination with respect to the petitioner's claim. *See Fortini*, 257 F.3d at 47. Thus, the Magistrate Judge erred in applying the AEDPA standard to that issue.

■ Because the autopsy photographs were relevant at trial, the Court finds that their admission was not so prejudicial as to rise to level of a constitutional violation. The jury saw only those photographs which were necessary to determine Lyons's intent at the time of the shaking incident. The only external trauma visible on the baby was a small scratch on his forehead; the more significant injuries were visible only in the autopsy photographs. No full body photographs of the baby showing his condition at the time of his death were shown to the jury. Thus, there was no extraneous prejudicial effect. Moreover, the photographs were admitted into evidence with an unequivocal limiting

instruction that mitigated any potential prejudice.

Lyons's reliance on *Spears v. Mullin* is misplaced. In that case, the Tenth Circuit Court of Appeals determined that photographs showing the victim's mutilated body at the crime scene were not relevant to the inquiry before the jury at sentencing, which was whether the defendant's murder was especially heinous, atrocious or cruel. *Spears*, 343 F.3d at 1227–28. That inquiry required proof of conscious physical suffering. *Id.* at 1226. The Court of Appeals explained that the photographs were not relevant to *conscious* physical suffering because the victim had died or lost consciousness *before* the wounds were inflicted. *Id.* at 1227. In light of their irrelevance, the photographs were deemed "unduly prejudicial". *Id.* at 1228. In contrast, the photographs introduced in Lyons's trial were relevant to an inquiry before the jury and the ruling in *Spears* is, therefore, inapposite.

Lyons also argues that, because the distinction between murder on a third-prong malice theory and involuntary manslaughter is so negligible, a modicum of prejudice might sway the jury. That argument is irrelevant to the instant constitutional inquiry. As discussed above, any prejudice resulting from the admission of the photographs was counterbalanced by their relevance and was further addressed by the trial judge's instruction to the jury. That conclusion is not affected by what crimes the jury had to consider. Therefore, this Court finds that Lyons has suffered no cognizable constitutional injury and his petition for writ of habeas corpus will be dismissed.[1]

---

1. The Court confines its holding to the federal constitutional inquiry properly before it but, nonetheless, expresses its concurrence with the dissenting opinion of the SJC that the trial judge did not abuse her discretion in reducing the verdict to involuntary manslaughter because she was in the best position to make such a decision pursuant to Mass. R.Crim. P. 25(b)(2). *See Lyons*, 828 N.E.2d at 11 (Cordy, J., dissenting).

## ORDER

In accordance with the foregoing, the Report and Recommendation (Docket No. 14) is accepted and adopted.

**So ordered.**