COMMONWEALTH *vs.* MICHAEL A. MORAN.

No. 08-P-1174.

Plymouth. May 7, 2009. - September 3, 2009.

Present: GRAINGER, BROWN, & RUBIN, JJ.

*Practice, Criminal,* Mistrial, Judicial discretion, Instructions to jury, Verdict. *Homicide. Intent.*

At a murder trial, the judge did not abuse his discretion in denying the defendant's motion for a mistrial that alleged prosecutorial misconduct arising from a witness's testimony about a subject that the parties had previously agreed not to introduce in evidence, where the record as it stood at the time of the judge's ruling indicated only that the medical examiner had made a spontaneous utterance, which the prosecutor had not attempted to elicit, on that subject. [192-193]

There was no merit to a criminal defendant's argument that prejudice arose at his murder trial from the judge's refusal to instruct on accident, where, under the judge's proper instructions on the level of intent required for both second degree murder and involuntary manslaughter, the jury could not have convicted the defendant if they had concluded that the victim's death was an unintended consequence of the defendant's actions. [193-195]

At a murder trial, the judge did not abuse his direction in denying the defendant's motion to reduce the verdict, where the weight of the evidence was entirely consistent with the jury's verdict of murder in the second degree based on the third prong of malice. [195]

INDICTMENT found and returned in the Superior Court Department on September 19, 2003.

The case was tried before *John P. Connor, Jr.,* J.

*Deirdre Lee Thurber* for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

RUBIN, J. The defendant appeals from a conviction of murder in the second degree, G. L. c. 265, § 1. He raises three claims of error on appeal.

The defendant was living with his girlfriend, Tabitha Hill,

and their two young children, Sarah and Gail.[1] On September 5, 2003, Hill took Sarah to the doctor and, at the defendant's insistence, left seven week old Gail in the defendant's care. Upon returning, Hill checked on Gail, who appeared to be fine. Later that evening, however, Gail had stopped breathing. Paramedics arrived and transported Gail to the hospital, but the doctor informed Hill that Gail had died. The defendant subsequently told the police that while Gail was in his care, he "slammed" her into her crib and her head hit the crib railing.

Prior to trial, the parties agreed not to elicit evidence of an old fracture in Gail's left ankle area. At trial, the prosecutor asked the medical examiner whether X-rays were taken of Gail's skull, whether the medical examiner examined the results of those X-rays, and what that examination indicated. The medical examiner responded that there was an old fracture in Gail's left ankle area. The prosecutor again asked whether X-rays were taken of Gail's skull, at which point the medical examiner responded that there was a fracture of the skullcap and skull. The defendant subsequently moved for a mistrial based on the admission of the evidence as to the ankle fracture.

1. *Motion for a mistrial.* The defendant argues that the medical examiner's testimony regarding the ankle fracture amounted to prosecutorial misconduct and that the trial judge abused his discretion in denying the defendant's motion for a mistrial. The defendant asserts that his trial counsel talked to the medical examiner after trial, at which point the medical examiner informed counsel that the prosecutor neglected to tell him not to mention the ankle fracture. The prosecutor, however, represented that he did tell the medical examiner not to mention the ankle fracture.

The issue of what the prosecutor told the medical examiner was raised by the defendant only at the time he made his post-trial motion pursuant to Mass.R.Crim.P. 25(b)(2), as amended, 420 Mass. 1502 (1995).[2] Even if we assume the prosecutor neglected to tell the medical examiner not to mention the ankle

---

[1]The children's names are pseudonyms.

[2]We note that the defendant did not seek an evidentiary hearing on the issue at that time, nor has he made a motion for a new trial seeking such a hearing in order to adduce facts that might support his argument that the prosecutor breached the agreement not to elicit testimony regarding the ankle fracture.

fracture, a question we do not decide, the record as it stood at the time of the judge's ruling on the motion for a mistrial indicates only a spontaneous utterance by a witness. The prosecutor asked the medical examiner about X-rays "of Gail's skull and head area." When the prosecutor asked what the witness's examination of the results of those X-rays indicated, the medical examiner responded about an ankle fracture. The prosecutor did not attempt to elicit any further testimony about the ankle fracture but rather returned to his original question, asking whether X-rays were taken "of the head area."

"The declaration of a mistrial in such circumstances is a decision within the sound discretion of the judge who is in the best position to determine whether the incident is likely to prejudice a jury." *Commonwealth* v. *Morales*, 440 Mass. 536, 548 (2003). The judge concluded that there was no basis for a mistrial. He noted that there was no allegation or evidence that the defendant had ever previously done anything violent to the child, and he offered to give an instruction on the matter in the jury charge if it were requested.[3] In these circumstances there was no abuse of the judge's discretion in denying the defendant's motion for a mistrial.

2. *Instruction on accident.* The defendant also argues that the trial judge erred in refusing to instruct on accident. In his brief, the defendant compared his case to an accidental shooting and argued that "[t]he throwing of Gail into the crib is comparable to the holding of the firearm, the accidental hitting of her head comparable to the accidental pulling of the trigger." This may be read to suggest that Gail died from an unintentional event, such as the accidental pulling of a trigger. See *Commonwealth* v. *Figueroa*, 56 Mass. App. Ct. 641, 648-650 (2002) (describing two categories of accidents, an unintended consequence of a defendant's act and an unintentional event occurring through inadvertence, mistake, or negligence). Throwing, at least in this case, however, is not comparable to holding. Rather, the throwing

---

[3]Defense counsel did not contemporaneously object to the medical examiner's testimony. At a sidebar conference shortly thereafter he argued that it was prejudicial and made his motion for a mistrial. Defense counsel stated at that time that he was not asking for a curative instruction telling the jury to disregard the testimony because he thought it would do additional harm to the defendant.

of the child was an intentional act comparable to the pulling of a trigger. Indeed, the evidence was undisputed that the defendant intended to throw Gail. At oral argument, the defendant clarified that he was arguing that the accident here falls into the category of an unintended consequence of a defendant's act. The defendant further explained that had the jury found this type of accident, they could not have convicted him of second degree murder.

It is still not clear what consequence the defendant is arguing was unintended. His argument could be construed to mean that he intended to slam Gail into her crib, by which we take him to mean onto the mattress in the crib, but that the hitting of her head on the crib railing was unintended. Or, he could mean that Gail's death was unintended. In either event, our analysis is the same.

The trial judge properly instructed as to the level of intent required for both second degree murder and involuntary manslaughter. With respect to second degree murder, the trial judge instructed that the Commonwealth had to prove "intent to cause death," "intent to cause grievous bodily harm," or "intent to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result." The trial judge also instructed the jury that "[i]nvoluntary manslaughter is an unlawful killing unintentionally caused by wanton or reckless conduct, creating a high degree of likelihood that substantial harm will result to another." They were instructed, "You have an obligation to return a verdict of the highest degree of murder that the Commonwealth has proved beyond a reasonable doubt."

Under these instructions, the jury could not have convicted the defendant of second degree murder if they concluded that the hitting of Gail's head on the crib railing was an unintended consequence of the slamming of Gail onto the mattress and that the slamming of Gail onto the mattress did not create a plain and strong likelihood of death. By a parity of reasoning, they also could not have convicted the defendant of second degree murder if they concluded that Gail's death was an unintended consequence of the defendant intentionally hitting Gail's head on the crib railing but that hitting Gail's head on that railing did not create a plain and strong likelihood of death. Because of the other instructions given by the judge, the defendant was, in light of

the type of accident alleged here, thus not prejudiced by the judge's refusal to give an accident instruction.

3. *Motion under rule 25(b)(2).* The defendant further argues that the trial judge erred in refusing to reduce the jury verdict under Mass.R.Crim.P. 25(b)(2).[4] The defendant argues that the trial judge abused his discretion in denying the rule 25(b)(2) motion under the facts of this case, which involved a single blow to a child's head. However, the weight of the evidence here was entirely consistent with murder in the second degree based on the third prong of malice. The jury were certainly warranted in finding a plain and strong likelihood of death in a man's slamming a seven week old infant into a crib with such force that when her head hit the crib railing, it cracked her skull. See *Commonwealth v. Lyons*, 444 Mass. 289, 292 (2005). We conclude that the trial judge did not abuse his discretion in denying the rule 25(b)(2) motion.

*Judgment affirmed.*

---

[4]The defendant also argues that the trial judge failed to exercise any discretion in denying the rule 25(b)(2) motion and instead deferred to the jury. The defendant relies on the trial judge's following statements: The jury "made a decision of second degree murder and I respect that decision. And I don't feel that I am in a position, based upon what I heard, and the time and seriousness of deliberations the jury gave to this, to second guess their decision. I believe that their decision was warranted." These statements indicate that the trial judge understood that he had discretion to reduce the jury verdict and that he was denying the rule 25(b)(2) motion because he believed that the evidence warranted a conviction for murder in the second degree.